# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# HELENA DIVISION

| | |
|---|---|
| MARIA MOELLER and RON MOELLER,<br><br>Plaintiffs,<br><br>vs.<br><br>THE ALIERA COMPANIES, INC.; TRINITY HEALTHSHARE; TIMOTHY MOSES, SHELLEY STEELE, CHASE MOSES, and DOES 1-10,<br><br>Defendants. | No. CV 20-22-H-SEH<br><br>FINDINGS OF FACT<br>CONCLUSIONS OF LAW<br>AND ORDER |

This case was filed March 20, 2020.[1] The Complaint was amended.[2]

Motions to compel arbitration were filed by Defendants.[3]

The parties, with leave of Court, conducted limited discovery directed to

---

[1] Doc. 1.

[2] Doc. 4.

[3] Docs. 14 and 17.

questions of the content of the contract between the parties and whether the contract required binding arbitration of contract disputes.[4] A F.R.E. 104 hearing was held to address and resolve questions as to the content of the contract.[5] Proposed Findings of Fact and Conclusions of Law, with briefs in support, were submitted.[6]

## FINDINGS OF FACT

In December, 2017, Plaintiff Ron Moeller submitted an application for membership in the Unity Healthshare, LLC ("Unity") CarePlus Advantage health sharing plan, administered by The Aliera Companies, Inc. ("Aliera").[7] Plaintiffs Ron and Maria Moeller ("Moellers") were notified on December 17, 2017, that their membership was "active" and effective January 1, 2018.[8]

Unity, in 2017, functioned as a health care sharing ministry ("HCSM")[9]

---

[4] Doc. 81.

[5] Docs. 190 and 193.

[6] Docs. 206 and 208.

[7] Exhibits ("Exs.") 1, 2, and 526; Docs. 195-1, 195-2, 199-8; April 12-13, 2021, Hearing Transcript at 65:16-19; 168:11-16; ("Tr."). At the April 12 and 13, 2021, hearing, the Court admitted, for purposes of the F.R.E. 104 hearing only, Plaintiffs' Exhibits 1-17, Aliera's Exhibits 501-516, and Trinity's Exhibits 519-535. Tr. 15:2-9; 21:2-10.

[8] Ex. 3; Doc. 195-3.

[9] 26 U.S.C. § 5000A(d)(2)(B) (2018); Tr. at 24:21-28:10.

which marketed and sold contracts entitled "plans" that were asserted to be exempt from healthcare insurance requirements of the Affordable Care Act ("ACA"), and by which members agreed to share in eligible medical costs[10] and that, in several ways, functioned like traditional insurance.[11] The terms and conditions of the Unity plan made available to Moellers were contained in the Unity Member Guide.[12]

Moellers moved to Helena, Montana, in March of 2018.[13] Monthly "contributions" to Unity were continued.[14]

In late 2018, Aliera sent Moellers an email which stated, in part, that Aliera would be changing Moellers' HCSM provider from Unity to Trinity Healthshare ("Trinity"), but that the plan would otherwise remain the same and that "no action is needed" by Moellers.[15] In December 2018 or January 2019, Moellers received from Aliera a copy of a document captioned "2018-2019 Member Guide" ("2018-

---

[10] 26 U.S.C. § 5000A(d) (2018); Ex. 1, Doc. 195-1.

[11] See Ex. 501; Doc. 198-1; Tr. at 23:6-10.

[12] Ex. 7; Doc. 195-7; Tr. at 132:20-22.

[13] Tr. at 33:1-12.

[14] Tr. at 66:12-15.

[15] Ex. 8; Doc. 195-8; Tr. at 133:8-25.

2019 Trinity Member Guide").[16] The 2018-2019 Trinity Member Guide differed substantially from the Unity Member Guide and included, among other differences in content, a mandatory and binding dispute resolution provision.[17]

Trinity was chartered as a non-profit corporation in June of 2018.[18] Like Unity, Trinity claimed to provide health sharing memberships administrated by Aliera.[19]

Contributions to the Trinity plan were to be used in part to pay covered member medical expenses.[20] Trinity previously conducted activities as "Trinity

---

[16] Ex. 535; Doc. 199-17; Tr. at 37:15-38:4.

[17] Ex. 535 at 9-11; Doc. 199-17 at 9-11. The differences between the 2018-2019 Trinity Member Guide and the Unity Member Guide are extensive. In addition to the arbitration clause that is only included in the 2018-2019 Trinity Member Guide, the plans also differ in a variety of other ways, including but not limited to: (1) when late fees are assessed; (2) when plans may be cancelled; (3) number of physical therapy visits allowed annually; (4) financial limits on organ transplants; (5) coverage for injuries resulting from acts of war; (6) coverage for injuries resulting from illegal activities of family members; (7) coverage for removal of objects from nose and ears of children over five; (8) coverage for non-elective abortion services when the mother's life is in danger; (9) coverage for circumcisions; (10) coverage for injuries caused by the member's negligence; (11) coverage of hospital stays over 60 days; (12) coverage for speech therapy; (13) coverage for post-surgical bras; (14) coverage for sexually transmitted diseases; (15) coverage for robotic surgery; (16) coverage for emergency room services; (17) coverage for immunizations; (18) coverage for nurse practitioner care; (19) coverage for pain management; (20) coverage for allergy testing; (21) coverage for aqua therapy; and (22) coverage for acupuncture. *See* Exs. 1 and 535; Docs. 195-1 and 199-17.

[18] Tr. at 205:2-3.

[19] Tr. at 199:20-200:2.

[20] *See* Ex. 535 at 6; Doc. 199-17 at 6.

Healthshare." It now operates under the name "Sharity Ministries, Inc."[21]

On January 13, 2019, Aliera notified Moellers by email that "until further notice" Moellers were "not being transitioned to Trinity" and that "your plan will remain a Unity HCSM plan at this time."[22] This statement from Trinity, in substance, withdrew any offer by Aliera and Trinity to transition Moellers to coverage by Trinity.

Moellers took no action in response to receipt of the 2018-2019 Trinity Member Guide or to any other communications received from Aliera, Unity, or Trinity between late 2018 and January 13, 2019.[23] No offer was made after January 13, 2019, by Aliera or Trinity for Moellers to transition from Unity to Trinity, nor was any such offer from Aliera or Trinity accepted by Moellers.

Also, as discussed above, Aliera had sent Moellers an email in late 2018 stating that Aliera would be changing Moellers' HCSM provider from Unity to Trinity, but "nothing changes on your plan except for the HCSM name."[24] That statement by Aliera of itself was flawed, inaccurate, and contained

---

[21] Tr. at 198:15-19.

[22] Ex. 508; Doc. 198-8; Tr. at 31:20-32:7.

[23] Tr. at 33:15-42:7.

[24] Ex. 8 at 1; Doc. 195-8 at 1.

misrepresentations of fact.

26 U.S.C. § 5000A(d)(2)(B) requires that an entity claiming to be a HCSM, or a predecessor entity, have existed and functioned "continuously and without interruption" since at least December 31, 1999.[25] Trinity, by definition, did not exist on December 31, 1999.[26] It does not qualify and never has qualified as a HCSM and could not claim to be such an entity when chartered in June of 2018.

On April 30, 2019, Moellers received an email from Aliera stating in part: "Aliera is no longer selling your current health plan with the Aliera Healthcare/Unity HealthShare, LLC component" and that "an affordable, seamless option - with the same benefits and services - exists."[27] Later, on May 2, 2019, Ron Moeller executed a Plan Update Authorization Form which stated in part: "I hereby authorize Aliera Healthcare to change my current Aliera/Unity plan to an equivalent Aliera/Trinity plan."[28]

Neither the April 30, 2019, email from Aliera nor the May 2, 2019, Plan Update Authorization Form executed by Ron Moeller contained any reference to

---

[25] 26 U.S.C. § 5000A(d)(B) (2018). Senate Bill No. 149, enacted by the 2021 Montana Legislature, effective April 21, 2021, has no application to the issues presented in this case. *See* Mont. Con. Ar. VI § 10; Mont. Code Ann. § 1-2-109 (2019).

[26] Tr. at 205:2-6.

[27] Ex. 509; Doc. 198-9.

[28] Ex. 12; Doc. 195-12; Tr. at 43:4-46:25.

arbitration of contract disputes, or to the terms, conditions, content, or identity of any specific member guide, or to any of the many differences between the Unity Member Guide and the 2018-2019 Trinity Member Guide.[29]

Aliera notified Moellers by email on June 18, 2019, of their transition from the Unity plan to a Trinity plan, effective June 1, 2019.[30] Moellers then made monthly "contributions" to Trinity/Aliera while enrolled with Trinity[31] until membership terminated, effective December 31, 2019.[32] Unity Healthshare, LLC is not named as a party in this case, has not appeared as such, and is not before the Court.[33]

It is also worthy of note that, on June 22, 2021, Judge Amy Totenberg of the Northern District of Georgia, in a factual and legal issue setting remarkably similar to this case, issued a thoughtfully reasoned and exhaustive Opinion and Order holding, *inter alia*: (1) Trinity did not qualify as a HCSM under the ACA; (2) the contracts at issue in that case were contracts of insurance; and (3) the contracts at

---

[29] Exs. 12 and 509; Docs. 195-12 and 198-9.

[30] Ex. 15; Doc. 195-15; Tr. at 52:3-54:12; 67:14-17; 53:19-25.

[31] Tr. at 67:18-21.

[32] Tr. at 68:20-69:2.

[33] Doc. 4.

issue there were not subject to mandatory resolution of disputes by arbitration.[34]

## DISCUSSION

As noted, Aliera and Trinity have filed motions to compel arbitration which are pending.[35] Whether the coverage and claim resolution disputes between the parties in this case are subject to arbitration in Montana is significant to the core issues before the Court.

A party seeking to compel arbitration has the burden to show: (1) the existence of a valid, written agreement to arbitrate; and (2) that the agreement to arbitrate includes the relevant issue.[36] Mandatory arbitration is an issue of contract law. The Court will look to state law principles to determine whether an agreement to arbitrate exists.[37]

Moellers, Aliera, and Trinity all contend that a contract existed between the parties.[38] If such a contract is to be said to exist, two questions must, at the outset,

---

[34] *LeCann v. The Aliera Companies, Inc.*, No. 1:20-CV-02429-AT (N.D. Ga. June 22, 2021). The full text of Judge Totenberg's Opinion and Order is attached as Exhibit A.

[35] Docs. 14 and 17.

[36] *See* 9 U.S.C. § 2 (1947); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

[37] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City Stores, Inc.*, 328 U.S. F.3d 1165, 1170 (9th Cir. 2003).

[38] *See* Docs. 161 and 162.

be answered: (1) who are the parties to the contract; and (2) what are the specific terms and conditions of the contract.

Moellers claim the substantive terms of the contract are contained in four documents: (1) the Unity Member Guide; (2) the Plan Update Authorization Form; (3) the Unity Sell Sheet; and (4) the Unity Quick Guide.[39] Plaintiffs ground their assertion in the April 30, 2019, email which stated, in part, that the terms of the contract between Plaintiffs, Aliera, and Trinity, would have "the same benefits and services" and be "equivalent" to the Unity plan.[40]

On the other hand, Aliera and Trinity allege that the substantive terms of the contract are contained in two documents: (1) the Plan Update Authorization Form; and (2) the 2019 Trinity Member Guide.[41] They base their assertion on the premise that the January 13, 2019, email from Aliera to Moellers: (1) constituted only "a **pause** in the invitation to join Trinity's sharing program" referenced in the 2018 email from Aliera that had informed Moellers they would be unilaterally transferred to a Trinity Plan, and (2) that the April 30, 2019, email revived or

---

[39] Exs. 1, 4, 7, and 12; Docs. 195-1, 195-4, 195-7, 195-12.

[40] Ex. 11; Doc. 195-11.

[41] Exs. 12 and 529; Docs. 195-12 and 199-1.

reinstated the late 2018 "invitation to join".[42]

Fundamentally, the disagreement between the parties encompasses and turns upon the answers to several separate contract law questions: (1) identities of the contracting parties; (2) terms and conditions of the contract that was entered into; (3) whether the contract contains a mandated dispute resolution clause; (4) the substantive nature of the contract, specifically, is the contract a contract of insurance; and (5) if the contract is a contract of insurance, is mandatory dispute resolution by arbitration a valid and enforceable component. Each of these issues will be addressed separately.

Moellers' execution of the Plan Update Authorization Form on May 2, 2019, was not in fact or in law acceptance of an offer by Moellers to contract for the plan in the 2018-2019 Trinity Member Guide or the 2019 Trinity Member Guide. Any offer previously extended by Aliera and Trinity and based on the 2018-2019 Trinity Member Guide had been withdrawn by Aliera's and Trinity's January 13, 2019, email,[43] and it had not been re-extended. Moellers never took any steps or action that expressed a willingness by them to accept the 2018-2019 Trinity Member Guide plan. Moreover, the record is void of evidence that

---

[42] See Doc. 212 at 19-20.

[43] Ex. 10; Doc. 195-10.

-10-

Moellers ever received the 2019 Trinity Member Guide plan or that they accepted the 2019 Trinity Member Guide plan.

Incorporation of an arbitration clause into the contract would have fundamentally altered the parties' dispute resolution process, would not have offered the same benefits and services as the Unity plan, and would not have been "equivalent" to the Unity plan. The fundamental components of an offer and acceptance of the 2019 Trinity Member Guide plan were never agreed upon.

The 2019 Trinity Member Guide was, notwithstanding disclaimer by Defendants Aliera and Trinity, an insurance contract (plan) under Montana law. Insurance in Montana is defined as "a contract through which one undertakes to indemnify another or pay or provide a specified or determinable amount or benefit upon determinable contingencies."[44] The terms contained language by which members paid a premium to be used along with premiums paid by other members to pay for eligible medical costs for members.[45] Trinity maintained exclusive control over what medical costs qualified for payment and how premiums collected were to be distributed.[46] The 2019 Trinity Member Guide evidenced a

---

[44] Mont. Code Ann. § 33-1-201(5)(a) (2019).

[45] Exs. 504 at 12 and 535 at 16; Docs. 198-4 at 12 and 199-17 at 16.

[46] Ex. 535 at 17 and Ex. 504 at 11; Docs. 199-17 at 5 and 198-4 at 11.

contract by which members (Plaintiffs) paid premiums and Trinity indemnified Plaintiffs for determinable amounts upon determinable contingencies.

Trinity, nevertheless, asserts the 2019 Trinity Member Guide contract was not a contract of insurance because Trinity is a HCSM and therefore exempt from insurance regulation.[47] However, Trinity does not and cannot qualify as a HCSM, and it cannot avoid the determination, by such an assertion, that the contract between the parties in this case is a contract of insurance.

Montana law prohibits arbitration of an insurance contract.[48] Defendants claim that Montana's "no arbitration of insurance" statute (Mont. Code Ann. 27-5-114(2)(c)) is both unconstitutional and preempted by the Federal Arbitration Act ("FAA").[49] Both assertions are wrong.

The FAA directly conflicts with the McCarran-Ferguson Act ("MFA"),[50] which states that "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of

---

[47] Ex. 8 and Ex. 519; Docs. 195-8 and 199-1.

[48] Mont. Code Ann. § 27-5-114(2)(c) (2019).

[49] 9 U.S.C. § 2 (1947).

[50] 15 U.S.C. §§ 1011-1015 (1945).

-12-

insurance."[51]

The Ninth Circuit has not spoken directly, by published opinion, to the issue of whether the MFA does reverse preempt the FAA with regard to state statutes that prevent arbitration of insurance contracts.[52] However, several other Circuits have addressed the same question and have consistently concluded that the MFA does reverse preempt application of the FAA in such cases.[53] Moreover, the Ninth Circuit in an unpublished opinion, *Technical Security Integration, Inc. v. Philadelphia Indemnity Insurance Company*, has itself held that the MFA reverse

---

[51] 15 U.S.C. § 1012(b) (1945).

[52] *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1058 (9th Cir. 2018) (holding that relevance of admiralty law made Montana law and MFA irrelevant); *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1381-82 (9th Cir. 1997) (holding that the facts at hand did not provoke a conflict between California law and the FAA so the MFA did not apply); *Allied Prof'l. Ins. Co. v. Anglesey*, 952 F.3d 1131, 1134 (9th Cir. 2020) ("Our court has not opined on the precise issue of the relationship between the McCarran-Ferguson Act and the Federal Arbitration Act").

[53] *Stephens v. Am. In'l Ins. Co.*, 66 F.3d 41, 45-46 (2d Cir. 1995) (holding that the MFA reverse preempted the FAA as to a Kentucky statute that subordinated arbitration clauses to the provisions of the relevant subtitle); *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 453-55 (4th Cir. 2017) ("In other words, state laws invalidating arbitration agreements in insurance policies 'reverse preempt[]' the [FAA]."); *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 492-94 (5th Cir. 2006) (holding that the MFA reverse preempted the FAA in regard to a Mississippi statute that read "no [uninsured motorist coverage] shall contain a provision requiring arbitration of any claim."); *Standard Sec. Life Ins. Co. of N.Y. v. West*, 267 F.3d 821, 823 (8th Cir. 2001) (affirming the District Court's holding that the MFA preempted the FAA as to a Missouri statute that stated arbitration clauses were valid except in contracts of insurance); *Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co., Inc.*, 969 F.2d 931, 935 (10th Cir. 1992) (holding that the MFA reverse preempted the FAA as to a Kansas statute that stated that arbitration agreements were valid except in contracts of insurance); *McKnight v. Chi. Title Ins. Co., Inc.*, 358 F.3d 854, 858-59 (11th Cir. 2004) (holding that the MFA reverse preempted the FAA as to a Georgia statute that forbade arbitration in contracts of insurance).

preempts the FAA.[54] Precedent in opinions of other Circuits and guidance drawn from the unpublished opinion of the Ninth Circuit in *Technical Security Integration, Inc. v. Philadelphia Indemnity Insurance Company* are persuasive.

The plain specific language of the MFA reverse preempts application of the broad language of the FAA to Montana law barring arbitration clauses in contracts of insurance.[55] The Montana statute is constitutional and, contrary to the FAA, applies to prohibit arbitration of insurance contracts in this state.

It is an unfortunate reality that this case, as now postured before the Court, presents and leaves unanswered numerous significant issues, several of which have not been raised by the parties, that the Court will be obliged to address, and that must be resolved before the case is positioned for merit disposition. The analyses and rulings in this Order, however, apply only to the issues specifically addressed and decided and are dispositive solely as to those issues.

A substantial number of undisputed facts are, however, established and of record:

1. In 2017, the Moellers were participants in a health care service plan

---

[54] *Tech. Sec. Integration, Inc. v. Phila. Indem. Ins. Co.*, 710 F. App'x. 753, 54-55 (9th Cir. 2018) (unpublished memorandum holding that the MFA reverse preempted the FAA as applied to a Washington State law prohibiting arbitration of insurance contracts).

[55] *See D. Ginsburg & Sons v. Popkin*, 285 U.S. 204, 208 (1932); *see also United States v. Corrales-Vasquez*, 931 F.3d 944, 950-51 (9th Cir. 2019).

denominated as "Unity Healthshare: CarePlus Advantage Plan,"[56] administered by Aliera.

2. In late 2018, Aliera informed Plaintiffs they were being transitioned from their existing Unity plan to a separate Trinity plan administered by Aliera.[57]

3. On January 13, 2019, Aliera/Trinity withdrew the late 2018 offer to transition Moellers to a separate plan in replacement of the Unity plan.[58] After withdrawal of the transition to the Trinity plan, the offer to transition Moellers to a Trinity plan was never re-extended by either Aliera or Trinity and Moellers did not accept any transition from a Unity plan to a Trinity plan.

4. The Unity plan in which Moellers had participated terminated on April 30, 2019, was not offered after its termination, and is no longer available.

5. Moellers had no health care plan with Unity after April 30, 2019.

6. Moellers did not contract with Aliera or Trinity for a health care sharing plan that contained an arbitration clause.

Undecided issues yet to be resolved, include but are not limited to:

1. As noted, Plaintiffs contend the essential terms of the contract are

---

[56] Ex. 7; Doc. 195-7.

[57] Ex. 8; Doc. 195-8.

[58] Ex. 10; Doc. 195-10.

contained primarily in the Unity Member Guide. Unity, however, is not a named party in this case and the question of how this Court could lawfully consider or decide any contract dispute between Moellers and Unity involving the Unity Healthshare, LLC CarePlus Advantage health sharing plan remains unresolved.

2. The Court's rulings on the arbitration question in this case also do not resolve the separate questions of whether (1) either the 2019 Trinity Member Guide or (2) the 2018-2019 Trinity Member Guide would, without a final, valid, and specific ruling by this Court that binding resolution of disputes by arbitration was mandated and was a valid component of the contract, would support a conclusion by this Court that a binding HCSM contract between Moellers and Trinity ever existed.

## CONCLUSION

ORDERED:

1. Moellers (a) did not accept an offer to enter into a contract containing a binding arbitration clause, (b) did not enter into a contract containing a binding arbitration clause, and (c) are not parties to a contract containing a binding arbitration clause.

2. Defendant Trinity Healthshare, Inc.'s Motion to Compel Arbitration

or, in the Alternative, Dismiss Claims and Stay Remaining Litigation[59] is DENIED.

3. The Aliera Companies, Inc.'s Motion to Compel Arbitration is DENIED.[60]

DATED this 30th day of June, 2021.

*Sam E. Haddon*
SAM E. HADDON
United States District Judge

---

[59] Doc. 17.

[60] Doc. 14.