IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MARIA MOELLER and RON MOELLER, <br><br> Plaintiffs, <br><br> vs. <br><br> THE ALIERA COMPANIES, INC., TRINITY HEALTHSHARE, TIMOTHY MOSES, SHELLEY STEELE, CHASE MOSES, and DOES 1-10, <br><br> Defendants. | CV 20-22-H-BMM-KLD <br><br> FINDINGS & RECOMMENDATION |

In July 2021, this Court stayed further proceedings by reason of bankruptcy proceedings filed by Defendants The Aliera Companies, Inc. ("Aliera") and Trinity Healthshare[1] in the United States Bankruptcy Court for the District of Delaware (Doc. 244).[2] Aliera and Sharity were subsequently dismissed as parties to this

---

[1] At some point after this action was filed in March 2020, Trinity Healthshare changed its name to Sharity Ministries, Inc. (Doc. 245 at 2). The Court will refer to Defendant Trinity Healthshare as Sharity.

[2] *See* Case Nos. 21-11001-TMH (Bankr. D. Del.) ("Sharity Case") and 21-11548-TMH (Bankr. D. Del.) ("Aliera Case"). The Court has taken judicial notice of these dockets.

action (Doc. 267). The Court requested additional briefing from Plaintiffs Maria and Ron Moeller (collectively, "Plaintiffs") and Defendants Timothy Moses, Shelley Steele, and Chase Moses (collectively, "Individual Defendants") as to the impact of the Aliera and Sharity bankruptcies on Plaintiffs' ability to prosecute this case against Individual Defendants. Plaintiffs and Individual Defendants filed the additional briefing on February 23, 2024. (Docs. 268, 269, and 270). The parties submitted response briefs on March 15, 2024. (Docs. 271 and 272).

## I.   Background.

Plaintiffs filed this action based on alleged fraudulent health care services provided by Defendants in March 2020. Plaintiffs' Second Amended Complaint asserts sixteen causes of action against the Defendants:

(i)     Breach of Contract;

(ii)    Unfair Claims Settlement Practices;

(iii)   Fraudulent Inducement;

(iv)    Deceit;

(v)     Constructive Fraud;

(vi)    Negligent Misrepresentation;

(vii)   Common Law Bad Faith;

(viii)  Negligence;

(ix)    Negligence Per Se;

(x)     Breach of Fiduciary Duty;

(xi)    Consumer Protection Act;

(xii)   Joint Tortious Enterprise;

(xiii)  Malice;

(xiv)   Promissory Estoppel;

(xv)    Equitable Estoppel; and

(xvi)   Alter Ego.

(Doc. 216).

Subsequent to the Second Amended Complaint, Sharity filed a subchapter V petition in the U.S. Bankruptcy Court for the District of Delaware on July 8, 2021. It filed its operative plan on October 14, 2021. (Sharity Case at Doc. 264 ("Sharity Plan")). It further filed a plan supplement on November 18, 2021. (Sharity Case at Doc. 299). The Delaware Bankruptcy Court issued an order confirming the Sharity Plan on December 2, 2021. (Sharity Case at Doc. 343 ("Sharity Confirmation Order")).

Similarly, Aliera filed a Chapter 11 bankruptcy petition on December 3, 2021. It filed the operative plan on August 14, 2023. (Aliera Case at Doc. 566 ("Aliera Plan")). Collectively, the Sharity Plan and Aliera Plan are "Plans." The Delaware Bankruptcy Court issued an order confirming the Aliera Plan on August 17, 2023. (Aliera Case at Doc. 576 ("Aliera Confirmation Order")). Collectively,

the Sharity Confirmation Order and Aliera Confirmation Order are "Confirmation Orders." As a result of the Confirmation Orders, this Court dismissed Aliera and Sharity as defendants. (Doc. 267).

Generally, the Sharity Plan and Aliera Plan create liquidating trusts. (Sharity Plan at 16; Aliera Plan, Ex. 1 at 46). Collectively, the trusts are "Liquidating Trusts." These Liquidating Trusts pay members under the respective Plans. Members are those individuals enrolled in Sharity (or Trinity Healthcare). (Sharity Plan at 17). The Aliera Plan contains similar language. (Aliera Plan at 48). Collectively, these individuals are "Members." Plaintiffs fall within this classification. (Doc. 216 at 11).

Specifically, the Liquidating Trusts pay the Claims held by Members.[3] The Liquidating Trusts are comprised of a combination of money and causes of actions against third parties. (Sharity Plan at 9, 12, and 16; Aliera Plan at 41 and 46). The liquidating trustees, the individuals in charge of administering the Liquidating

---

[3] A "Claim" is defined pursuant to 11 U.S.C. § 101(5). (Sharity Plan at 12-13). Section 101(5) defines a claim as any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured."

Trusts, have the sole and exclusive authority to pursue causes of action that are held by Sharity and Aliera or their bankruptcy estates, unless any of these causes of action are expressly waived or released. (Sharity Plan at 44; Aliera Plan at 22-23). Collectively, the trustees are "Liquidating Trustees." The Liquidating Trustees work in concert to prosecute actions against third parties, including all causes of action against current and former Insiders. (Aliera Plan at 23). Under the Aliera Plan, "Insider" has the same meaning as 11 U.S.C. § 101(31). (Aliera Plan at 44). Section 101(31) includes, in part, any director of the debtor, officer of the debtor, person in control of the debtor or affiliate of the debtor. Individual Defendants are alleged to be Insiders. (Doc. 216 at ¶ 18). Any and all causes of action against Insiders are reserved. (Aliera Plan at 23). If there is any disagreement as to what the Plans do or do not mean, the Delaware Bankruptcy Court retains jurisdiction to hear said dispute. (Sharity Plan at 53-55; Aliera Plan at 34-35). The Confirmation Orders contain similar language. (Sharity Confirmation Order at 18; Aliera Confirmation Order at 13).

Notably, the Aliera Plan contains the following language:

13.3 Injunction.

Except as otherwise provided in this Plan or Confirmation Order, as of the Effective Date all Persons that hold a Claim are permanently enjoined from taking any of the following actions: (1) commencing or continuing in any manner any action or other proceeding against an Exculpated Party with respect to an Exculpated Claim, or as against

5

any of the Assets[4] to be distributed under this Plan or any other Trust Assets; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against an Exculpated Party with respect to an Exculpated Claim, or as against any of the any of the Assets to be distributed under this Plan or any other Trust Assets; or (3) creating, perfecting or enforcing any lien or encumbrance against an Exculpated Party with respect to an Exculpated Claim, or as against any of the Assets to be distributed under this Plan or any other Trust Assets. Nothing in this injunction shall preclude the Holder of a Claim from enforcing its rights to the treatment provided in this Plan, from pursing any available insurance or third parties not expressly described above, or from seeking discovery in actions against third parties. Nothing in the Plan or this Confirmation Order shall preclude any Governmental Entity from using its own judicial or regulatory processes to initiate, pursue, or resolve any police or regulatory matters involving the Debtor and to settle such matters or enter judgment thereon, but with the understanding that collection of any amounts found to be owing from the Debtor shall be made in accordance with the payment terms of the Plan to holders of Class 5 Claims.

(Aliera Plan at 33).

Similarly, the Sharity Plan states:

Except as otherwise specifically provided in the Combined Plan and Disclosure Statement, all Persons who have held, hold, or may hold Claims against or Interests in the Debtor and any successors, assigns or representatives of such Person shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or

---

[4] "Assets" means "all assets and property of the Debtors of any nature whatsoever, including, all property of their respective Estates pursuant to Bankruptcy Code Section 541, Avoidance Action Recoveries, Cash, Causes of Action, equipment, General Litigation Recoveries, inventory, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing, including without limitation, proceeds of the sale of any Assets pending disbursement." (Aliera Plan at 41).

continuing in any manner any Claim, action or other proceeding of any kind against any of the assets to be distributed under the Plan, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order with respect to any of the assets to be distributed under the Plan, and (c) creating, perfecting or enforcing any encumbrance of any kind with respect to any of the assets to be distributed under the Plan. All Persons or Entities who directly or indirectly have held, hold, may hold, or seek to assert Claims that been exculpated in this Plan (the "Exculpated Claims") shall be enjoined from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to the Exculpated Claims; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order on account of or in connection with or with respect to the Exculpated Claims; (iii) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to the Exculpated Claims (iv) asserting any right of subrogation on account of or in connection with or with respect to the Exculpated Claims, except to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim; (v) or commencing or continuing in any manner any action or other proceeding on account of or in connection with or with respect to the Exculpated Claims.

(Sharity Plan at 52).

Following confirmation of the Aliera Plan, the Official Committee of Unsecured Creditors of the Aliera Companies and the Sharity Liquidating Trustee filed an adversary proceeding against the Individual Defendants and various entities.[5] The Adversary Complaint includes the following counts:

---

[5] 1:23-ap-50433-TMH (Bankr. D. Del.) ("Adversary Proceeding"), Doc. 1 ("Adversary Complaint").

(i)     Breach of Duty of Care;

(ii)    Breach of Duty of Loyalty;

(iii)   Aiding and Abetting Breach of Fiduciary Duty;

(iv)    Civil Conspiracy;

(v)     Voidable Transfers and Obligations – Constructive Fraud;

(vi)    Voidable Transfers and Obligations – Actual Fraud;

(vii)   Voidable Transfers and Obligations as to Present or Future Creditors;

(viii)  Recovery of Transfers;

(ix)    Preservation of Avoided Transfers; and

(x)     Disallowance of Claims.

## II.     Parties' Arguments.

Plaintiffs argue their claims against the Individual Defendants are brought against them in their individual capacity and as such, are distinct from those held by the Liquidating Trustees. (Doc. 272 at 3). Plaintiffs contend their claims are specific in nature and each count is brought against the Individual Defendants. (Doc. 272 at p. 3-4).[6] Plaintiffs further argue that the Individual Defendants are mischaracterizing the complaints filed by the Liquidating Trustees in the Delaware

---

6 Plaintiffs additionally argue this Court has jurisdiction to hear their claims against the Individual Defendants. (Doc. 270 at 6). However, the Court will not address the personal jurisdiction argument raised by Plaintiffs at this time because no motion to dismiss for lack of personal jurisdiction is pending.

Bankruptcy Court, stating that the Liquidating Trustees do not have the exclusive right to pursue Members' individual tort actions against the Individual Defendants, that there has been no ruling that indicates the Liquidating Trustees have standing to bring general alter ego claims on behalf of creditors, and the remedies and claims are for the estate, not individual Members.

The Individual Defendants argue that, because Sharity and Aliera were dismissed, only the alter ego claim set forth in Count 16 against the Individual Defendants remains. (Doc. 268 at 2). Alternatively, the Individual Defendants argue that all of Plaintiffs' claims are brought against the Individual Defendants under an alter ego theory. (Doc. 271 at 13). Further, the Individual Defendants argue that all claims, regardless of how characterized, are the property of the bankruptcy estate. (Doc. 271 at 3). Because the Liquidating Trustee may pierce the corporate veil and Plaintiffs' alter ego theory of liability is general to every creditor in the Sharity and Aliera Cases, the Individual Defendants assert that Plaintiffs' claims have thus been subsumed by the Liquidating Trustees' alter ego claim brought on behalf of Members in the Adversary Proceeding. (Doc. 271 at 5-10). The Individual Defendants further note that the Liquidating Trustees have brought claims against the Individual Defendants which contain similar allegations to those made by Plaintiffs. (Doc. 271 at 10-11).

//

### III.   Applicable Law.

A confirmed bankruptcy plan operates as a final judgment. *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 972 (9th Cir. 2005). The confirmed plan acts as a new and binding contract between a debtor and its creditors. *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993). Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to res judicata effect. *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995).

"[I]t is well recognized that a bankruptcy court has the power to interpret and enforce its own orders." *In re Wilshire Courtyard*, 729 F.3d 1279, 1289 (9th Cir. 2013). A close nexus exists between a post-confirmation matter and a bankruptcy proceeding sufficient to support "related-to" jurisdiction when the matter "affect[s] the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *In re Wilshire*, 729 F.3d at 1289. Notably, intepretation of the plan and accompanying confirmation order "is the only way for a court to determine the essential character of the negotiated Plan transactions in a way that reflects the deal the parties struck in chapter 11 proceedings." *In re Wilshire*, 729 F.3d at 1290. Accordingly, plan and confirmation order interpretation is "reason enough" for the bankruptcy court to exercise jurisdiction. *In re Wilshire*, 729 F.3d at 1290. As a result, district courts routinely defer to the

10

bankruptcy court on matters of plan interpretation. *See, e.g., Gonzalez v. Valdes-Garcia*, Case No. 2:20-cv-01775-RFB-NJK, 2023 U.S. Dist. LEXIS 42440, at \*25-26 (D. Nev. Mar. 14, 2023) (requiring plaintiff to seek bankruptcy court approval after determining plaintiff's ability to prosecute breach of contract claim "depends upon the interpretation of the bankruptcy court's order on the confirmed Plan."); *see also J&K Adrian Bakery, LLC v. Dayton Superior Corp.*, Case No. 2:11-CV-4307-KOB, 2012 U.S. Dist. LEXIS 113573, at \*13-14 (N.D. Ala. Aug. 13, 2012) (Delaware Bankruptcy Court in best position to interpret confirmation order and related plan to determine if plaintiff's claims are precluded).

## IV.    Analysis.

Although not entirely clear from the filings, the parties appear to dispute the scope and breadth of the Plans and whether Plaintiffs' claims are enjoined. The crux of Plaintiffs' argument is the alleged claims are individualized to Plaintiffs, and thus the claims are not subsumed by those held by the Liquidating Trustees.

From the outset, scrutiny of Plaintiffs' Second Amended Complaint reveals that it is pled in such a way that it is difficult to discern what conduct is attributable to Individual Defendants as opposed to Aliera or Sharity. Notably, throughout the Second Amended Complaint, there are only six specific references to Shelley Steele. (Doc. 216 at ¶¶ 5, 18, 125, 126, and 127). The allegations in ¶¶ 5 and 18 are general allegations related to residency and her position at Aliera. The only

specific allegations that involve her are included at ¶¶ 125-127, and underlie the alter ego theory.

The Second Amended Complaint treats Tim Moses similarly; however, he is also referred to in ¶¶ 19, 20, 21, 22, 24, and 84. Generally, these allegations correspond to Moses's prior conviction and characterize him as a fraudster. The allegation in ¶ 84 relates to Fraudulent Inducement, alleging that Defendants did not disclose said prior conviction. The Second Amended Complaint sparsely references Chase Moses. (Doc. 216 at ¶¶ 5, 18, 125).

The remainder of the Second Amended Complaint refers to "Defendants" collectively making it difficult to discern whether alleged conduct is attributable to Aliera, Sharity, or the Individual Defendants. As a result, this Court has difficulty divorcing the allegations against Aliera or Sharity from the allegations involving the Individual Defendants. Although Plaintiffs go to great lengths to distinguish their claims against the Individual Defendants from Aliera and Sharity, the claims as pled in the Second Amended Complaint are indistinguishable and the Court cannot discern whether the claims are individualized as Plaintiffs argue.

Further, as a practical matter, the Individual Defendants appear to be Insiders. (Doc. 216 at ¶ 18). Plaintiffs allege that Shelley Steele was the CEO of Aliera Healthcare Inc., Chase Moses was the President and Tim Moses was Executive Director. As such, the relief Plaintiffs seek closely mirrors relief sought

by the Official Committee of Unsecured Creditors of the Aliera Companies and the Sharity Liquidating Trustee in the Adversary Proceeding. Here—and in the Adversary Proceeding—there is a concerted effort to impose liability on the Individual Defendants, obtain a judgment against each of them and satisfy the judgment from their assets. Given the broad language in the Plan and Confirmation Order, reserving to the Liquidating Trusts all claims against Insiders and the equally broad language in the injunctions, this Court is not persuaded by Plaintiffs' argument that no ruling confers standing to the Liquidating Trustees to bring general alter ego claims on behalf of Members. As a result, allowing Plaintiffs to proceed here may run afoul of the Plan and Confirmation Order.

At a minimum, it appears Plaintiffs' factual allegations overlap with the allegations asserted in the Adversary Proceeding. The relief sought is similar, and any recovery by Plaintiffs individually would diminish the resources available to the Liquidating Trusts if they prevail against the Individual Defendants after Plaintiffs' suit is resolved. Under these circumstances, permitting Plaintiffs' case to proceed without an affirmative determination that this action is neither enjoined nor violative of the Plans and Confirmation Orders gives this Court pause.

This Court does not and should not make that determination. Instead, the more appropriate venue is the Delaware Bankruptcy Court, which enjoys "related-to" jurisdiction to interpret the Plans and Confirmation Orders. As Members,

13

Plaintiffs are bound by the Plans and Confirmation Orders, and the Delaware Bankruptcy Court is in the best position to determine if Plaintiffs' claims against Individual Defendants are enjoined.

## V.    Conclusion

For the reasons stated above,

IT IS RECOMMENDED that further proceedings in this case be stayed, pending a determination by the Delaware Bankruptcy Court that Plaintiffs' claims against Individual Defendants are not enjoined under the Plans and Confirmation Orders.

IT IS FURTHER RECOMMENDED that Plaintiffs shall file a Notice to the Court indicating the Delaware Bankruptcy Court's determination. Upon the filing of the Notice, the Court will set a status conference to determine further action in this case.

//

//

//

//

//

//

//

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 22nd day of August, 2024.

_____
Kathleen L. DeSoto
United States Magistrate Judge